# EXHIBIT 4

NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.

**CVS RX Services, Inc. and CVS Pharmacy, Inc. and Kenneth Sternfeld.** Cases 29–CA–141164 and 29–CA–155028

May 4, 2016

DECISION AND ORDER

BY CHAIRMAN PEARCE AND MEMBERS MISCIMARRA AND MCFERRAN

On December 24, 2015, Administrative Law Judge Lauren Esposito issued the attached decision. The Respondents filed exceptions and a supporting brief, the General Counsel filed an answering brief, and the Respondents filed a reply brief.

The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.

The judge found, applying the Board's decisions in *D. R. Horton*, 357 NLRB 2277 (2012), enf. denied in relevant part 737 F.3d 344 (5th Cir. 2013), and *Murphy Oil USA, Inc.*, 361 NLRB No. 72 (2014), enf. denied in relevant part 808 F.3d 1013 (5th Cir. 2015), that the Respondents violated Section 8(a)(1) of the Act by implementing and maintaining an arbitration program that requires employees, as a condition of employment, to waive their rights to pursue class or collective actions involving employment-related claims in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver.

The Board has considered the decision and the record in light of the exceptions and briefs[1] and has decided to affirm the judge's rulings, findings,[2] and conclusions,[3] as

[1] The Respondents have requested oral argument. The request is denied as the record, exceptions, and briefs adequately present the issues and the positions of the parties.

[2] The Respondents contend that the opt-out provision of its arbitration program places it outside the scope of the prohibition against mandatory individual arbitration agreements under *Murphy Oil* and *D. R. Horton*. See *D. R. Horton*, 357 NLRB at 2289 fn. 28. For the reasons stated by the judge, we reject this argument. See *On Assignment Staffing Services*, 362 NLRB No. 189, slip op. at 1, 4–5 (2015); see also *Nijjar Realty, Inc., d/b/a Pama Management*, 363 NLRB No. 38 (2015).

[3] The Respondents argue that the complaint against CVS Pharmacy, Inc. (Pharmacy) is time barred by Sec. 10(b) because the unfair labor practice charge against Pharmacy was filed and served more than 6 months after Pharmacy implemented the Arbitration of Workplace Legal Disputes Policy and the CVS Health Arbitration Agreement. We reject this argument as to the maintenance allegation, because Pharmacy continued to maintain the Respondents' unlawful arbitration program during the 6-month period preceding the filing of the charge. Although the Respondents contend that Pharmacy did not "apply or enforce" the policy, they do not dispute that Pharmacy's policy and

modified below, and to adopt the recommended Order as modified and set forth in full below.[4]

AMENDED CONCLUSIONS OF LAW

Substitute the following as Conclusion of Law 3.

"3(a) By implementing and maintaining a mandatory arbitration program that requires employees, as a condi-

agreement were in effect during the 10(b) period "on an ongoing basis" as the judge found, and as established in the joint stipulation and alleged in the complaint. The Board has long held under these circumstances that maintenance of an unlawful workplace rule, such as the Respondents' arbitration program, constitutes a continuing violation that is not time-barred by Sec. 10(b). See *PJ Cheese, Inc.*, 362 NLRB No. 177, slip op. at 1 (2015); *Neiman Marcus Group, Inc.*, 362 NLRB No. 157, slip op. at 2 & fn. 6 (2015); and *Cellular Sales of Missouri, LLC*, 362 NLRB No. 27, slip op. at 2 & fn. 7 (2015). We find merit, however, in the Respondents' exception with regard to the allegation that Pharmacy unlawfully implemented the arbitration program. Because the record indicates that the charge against Pharmacy was filed outside the 10(b) period for implementation, we find that the implementation allegation is time-barred. Accordingly, we shall amend the judge's conclusions of law and recommended Order to reflect that, with respect to Pharmacy, only its maintenance of the arbitration program was unlawful.

The Respondents raise several additional arguments, including that the charge was improperly solicited, that the charges do not adequately support the complaint, and that the complaint does not provide the Respondents with adequate notice of the claims against them. We find these arguments to be meritless for the reasons stated by the judge.

Finally, the Respondents contend that the judge erred in awarding retroactive relief. We applied our holdings in *D. R. Horton*, *Murphy Oil*, and *On Assignment* retroactively. As a result, we reject the Respondents' contention that retroactive relief here would be manifestly unjust and deny their request that any remedy be applied prospectively only.

Our dissenting colleague, relying on his dissenting position in *Murphy Oil*, above, slip op. at 22–35, would find that the Respondents' arbitration program does not violate Sec. 8(a)(1), especially because the program contains an opt-out provision. He observes that the Act "creates no substantive right for employees to insist on class-type treatment of non-NLRA claims." This is surely correct, as the Board has previously explained in *Murphy Oil*, above, slip op. at 2, and *Bristol Farms*, 363 NLRB No. 45, slip op. at 2 fn. 2 (2015). But what our colleague ignores is that the Act "does create a right to *pursue* joint, class, or collective claims if and as available, without the interference of an employer-imposed restraint." *Murphy Oil*, above, slip op. at 2 (emphasis in original). The Respondents' arbitration program is just such an unlawful restraint even considering its opt-out provision. See *On Assignment Staffing Services*, above, slip op. at 4, 8–9 & fns. 28, 29, and 31.

Likewise, for the reasons explained in *Murphy Oil* and *Bristol Farms*, there is no merit to our colleague's view that finding the arbitration program unlawful runs afoul of employees' Sec. 7 right to "refrain from" engaging in protected concerted activity. See *Murphy Oil*, above, slip op. at 38; *Bristol Farms*, above, slip op. at 2. Nor is he correct in insisting that Sec. 9(a) of the Act requires the Board to permit individual employees to prospectively waive their Sec. 7 right to engage in concerted legal activity. See *Murphy Oil*, above, slip op. at 17–18; *Bristol Farms*, above, slip op. at 2.

[4] We shall modify the judge's recommended Order to conform to the Board's standard remedial language for the violations found and to provide separate Orders for CVS RX Services, Inc. and Pharmacy. We shall also substitute new notices to conform to the Orders as modified.

tion of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver, Respondent CVS RX Services, Inc. has violated Section 8(a)(1) of the Act.

"(b) By maintaining a mandatory arbitration program that requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver, Respondent CVS Pharmacy, Inc. has violated Section 8(a)(1) of the Act."

ORDER

A. The National Labor Relations Board orders that the Respondent, CVS RX Services, Inc., Woonsocket, Rhode Island, with a place of business in Chemung, New York, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Implementing and maintaining a mandatory arbitration program that requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver.

(b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement in all of their forms, or revise them in all of their forms to make clear to employees that the arbitration program does not constitute a waiver of their right to maintain employment-related joint, class, or collective actions in all forums.

(b) Notify all current and former employees who were required to sign or otherwise become bound to the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement in any form that they have been rescinded or revised and, if revised, provide them a copy of the revised documents.

(c) Within 14 days after service by the Region, post a copy of the attached notice marked "Appendix A" at all CVS RX Services, Inc. facilities where the unlawful Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the

CVS Health Arbitration Agreement are or have been in effect.[5] Copies of the notices, on forms provided by the Regional Director for Region 29, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material. If the Respondent has gone out of business or closed facilities involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice marked "Appendix A" to all current employees and former employees employed by CVS RX Services, Inc. at any time since October 1, 2014.

(d) Within 21 days after service by the Region, file with the Regional Director for Region 29 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

B. The National Labor Relations Board orders that the Respondent, CVS Pharmacy, Inc., Woonsocket, Rhode Island, with a place of business in Lindenhurst, New York, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Maintaining a mandatory arbitration program that requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver.

(b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement in all of their forms, or revise them in all of their forms to make clear to employees that the arbitration program does not constitute a waiver of their right to maintain

---

[5] If this Order is enforced by a judgment of a United States court of appeals, the words in the notices reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

employment-related joint, class, or collective actions in all forums.

(b)  Notify all current and former employees who were required to sign or otherwise become bound to the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement in any form that they have been rescinded or revised and, if revised, provide them a copy of the revised documents.

(c)  Within 14 days after service by the Region, post a copy of the attached notice marked "Appendix B" at all CVS Pharmacy, Inc. facilities where the unlawful Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement are or have been in effect.[6] Copies of the notices, on forms provided by the Regional Director for Region 29, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted.  In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means.  Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material.  If the Respondent has gone out of business or closed facilities involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice marked "Appendix B" to all current employees and former employees employed by CVS Pharmacy, Inc. at any time since December 25, 2014.

(d)  Within 21 days after service by the Region, file with the Regional Director for Region 29 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated, Washington, D.C.   May 4, 1016

_____
Mark Gaston Pearce,                              Chairman

_____
Lauren McFerran,                                  Member

(SEAL)          NATIONAL LABOR RELATIONS BOARD

MEMBER MISCIMARRA, dissenting.

In this case, my colleagues find that the Respondents' CVS Health Arbitration Agreement and Arbitration of Workplace Legal Disputes Policy, including the Arbitration of Workplace Legal Disputes, Course 800305 and CVS Health Colleague Guide to Arbitration (the Program), violate Section 8(a)(1) of the National Labor Relations Act (the Act or NLRA) because the Program waives the right to participate in class or collective actions regarding non-NLRA employment claims.  I respectfully dissent from this finding for the reasons explained in my partial dissenting opinion in *Murphy Oil USA, Inc.*[1]

I agree that an employee may engage in "concerted" activities for "mutual aid or protection" in relation to a claim asserted under a statute other than NLRA.[2]  However, I disagree with my colleagues' finding that Section 8(a)(1) of the NLRA prohibits agreements that waive class and collective actions, and I especially disagree with the Board's finding here, similar to the Board majority's finding in *On Assignment Staffing Services*,[3] that class-waiver agreements violate the NLRA even when they contain an opt-out provision.  In my view, Sections 7 and 9(a) of the NLRA render untenable both of these propositions.  As discussed in my partial dissenting opinion in *Murphy Oil*, NLRA Section 9(a) protects the right of every employee as an "individual" to "present" and

---

[6]  If this Order is enforced by a judgment of a United States court of appeals, the words in the notices reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

[1]  361 NLRB No. 72, slip op. at 22–35 (2014) (Member Miscimarra, dissenting in part).  The Board majority's holding in *Murphy Oil* invalidating class-action waiver agreements was denied enforcement by the Court of Appeals for the Fifth Circuit.  *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013 (5th Cir. 2015).  Because I would find the Program lawful, I find it unnecessary to reach the issues addressed by the majority in fn. 3 of their opinion.

[2]  I agree that non-NLRA claims can give rise to "concerted" activities engaged in by two or more employees for the "purpose" of "mutual aid or protection," which would come within the protection of NLRA Sec. 7.  See *Murphy Oil*, 361 NLRB No. 72, slip op. at 23–25 (Member Miscimarra, dissenting in part).  However, the existence or absence of Sec. 7 protection does not depend on whether non-NLRA claims are pursued as a class or collective action, but on whether Sec. 7's statutory requirements are met—an issue separate and distinct from whether an individual employee chooses to pursue a claim as a class or collective action.  Id.; see also *Beyoglu*, 362 NLRB No. 152, slip op. at 4–5 (2015) (Member Miscimarra, dissenting).

[3]  362 NLRB No. 189, slip op. at 1, 4–5 (2015).

4                                    DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

"adjust" grievances "at any time."[4] This aspect of Section 9(a) is reinforced by Section 7 of the Act, which protects each employee's right to "refrain from" exercising the collective rights enumerated in Section 7. Thus, I believe it is clear that (i) the NLRA creates no substantive right for employees to insist on class-type treatment of non-NLRA claims;[5] (ii) a class-waiver agreement pertaining to non-NLRA claims does not infringe on any NLRA rights or obligations, which has prompted the overwhelming majority of courts to reject the Board's position regarding class-waiver agreements;[6] (iii) enforcement of a class-action waiver as part of an arbitration agreement is also warranted by the Federal Arbitration Act (FAA);[7] and (iv) for the reasons stated in my

dissenting opinion in *Nijjar Realty, Inc. d/b/a Pama Management*, 363 NLRB No. 38, slip op. at 3–5 (2015), the legality of such a waiver is even more self-evident when the agreement contains an opt-out provision, based on every employee's Section 9(a) right to present and adjust grievances on an "individual" basis and each employee's Section 7 right to "refrain from" engaging in protected concerted activities. Although questions may arise regarding the enforceability of particular agreements that waive class or collective litigation of non-NLRA claims, I believe these questions are exclusively within the province of the court or other tribunal that, unlike the NLRB, has jurisdiction over such claims.

Accordingly, I respectfully dissent.

Dated, Washington, D.C.   May 4, 2016

_____

Philip A. Miscimarra,                        Member

NATIONAL LABOR RELATIONS BOARD
APPENDIX A
NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
National Labor Relations Board
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO
    Form, join, or assist a union
    Choose representatives to bargain with us on your behalf
    Act together with other employees for your benefit and protection
    Choose not to engage in any of these protected activities.

WE WILL NOT implement or maintain a mandatory arbitration program that requires our employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

---

[4] *Murphy Oil*, above, slip op. at 30–34 (Member Miscimarra, dissenting in part). Sec. 9(a) states: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That *any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted*, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment" (emphasis added). The Act's legislative history shows that Congress intended to preserve every individual employee's right to "adjust" any employment-related dispute with his or her employer. See *Murphy Oil*, above, slip op. at 31–32 (Member Miscimarra, dissenting in part).

[5] When courts have jurisdiction over non-NLRA claims that are potentially subject to class treatment, the availability of class-type procedures does not rise to the level of a substantive right. See *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 362 (5th Cir. 2013) ("The use of class action procedures . . . is not a substantive right.") (citations omitted), petition for rehearing en banc denied No. 12–60031 (5th Cir. 2014); *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.").

[6] The Fifth Circuit has repeatedly denied enforcement of Board orders invalidating a mandatory arbitration agreement that waived class-type treatment of non-NLRA claims. See, e.g., *Murphy Oil, Inc., USA v. NLRB*, above; *D.R. Horton, Inc. v. NLRB*, above. The overwhelming majority of courts considering the Board's position have likewise rejected it. See *Murphy Oil*, 361 NLRB No. 72, slip op. at 34 (Member Miscimarra, dissenting in part); id., slip op. at 36 fn. 5 (Member Johnson, dissenting) (collecting cases); see also *Patterson v. Raymours Furniture Co.*, 96 F.Supp.3d 71 (S.D.N.Y. 2015); *Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d 1072 (N.D. Cal. 2015), motion to certify for interlocutory appeal denied 2015 WL 4035072 (N.D. Cal. June 30, 2015); *Brown v. Citicorp Credit Services*, No. 1:12-CV-00062-BLW, 2015 WL 1401604 (D. Idaho Mar. 25, 2015) (granting reconsideration of prior determination that class waiver in arbitration agreement violated NLRA); but see *Totten v. Kellogg Brown & Root, LLC*, No. ED CV 14-1766 DMG (DTBx), 2016 WL 316019 (C.D. Cal. Jan. 22, 2016).

[7] For the reasons expressed in my *Murphy Oil* partial dissent and those thoroughly explained in former Member Johnson's dissent in *Murphy Oil*, the FAA requires that the arbitration agreement be en-

forced according to its terms. *Murphy Oil*, above, slip op. at 34 (Member Miscimarra, dissenting in part); id., slip op. at 49–58 (Member Johnson, dissenting).

WE WILL rescind the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement in all of their forms, or revise them in all of their forms to make clear that the arbitration program does not constitute a waiver of your right to maintain joint, class, or collective actions in all forums.

WE WILL notify all current and former employees who were required to sign or otherwise become bound to the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement in any form that they have been rescinded or revised and, if revised, WE WILL provide them a copy of the revised documents.

CVS RX SERVICES, INC.

The Board's decision can be found at www.nlrb.gov/case/29–CA–141164 or by using the QR code below.  Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273-1940.



APPENDIX B

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union
Choose representatives to bargain with us on your behalf
Act together with other employees for your benefit and protection
Choose not to engage in any of these protected activities.

WE WILL NOT maintain a mandatory arbitration program that requires our employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

WE WILL rescind the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement in all of their forms, or revise them in all of their forms to make clear to employees that the arbitration program does not constitute a waiver of your right to maintain joint, class, or collective actions in all forums.

WE WILL notify all current and former employees who were required to sign or otherwise become bound to the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement in any form that they have been rescinded or revised and, if revised, WE WILL provide them a copy of the revised documents.

CVS PHARMACY, INC.

The Board's decision can be found at www.nlrb.gov/case/29–CA–141164 or by using the QR code below.  Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273-1940.



*Lynda Tooker, Esq.,* for the General Counsel.
*James N. Boudreau, Esq.* and *Christiana L. Signs, Esq.,* for the Respondent.

DECISION

STATEMENT OF THE CASE

LAUREN ESPOSITO, Administrative Law Judge.  Based upon a charge in Case 29–CA–141164 filed on November 17, 2014, and a charge in Case 29–CA–155028 filed on June 25, 2015, by

# EXHIBIT 4

6                    DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

Kenneth Sternfeld, an individual, an order consolidating cases, amended consolidated complaint, and notice of hearing issued on August 27, 2015 (the complaint). The complaint alleges that CVS RX Services, Inc. (RX Services), a wholly owned subsidiary of CVS Pharmacy, Inc. (Pharmacy), and Pharmacy violated Section 8(a)(1) of the Act by implementing and maintaining a workplace dispute resolution program which coerces and restrains employees in the exercise of their rights pursuant to Section 7 of the Act. RX Services and Pharmacy filed an answer denying the complaint's material allegations.

This case was tried before me on October 28, 2015, in Brooklyn, New York. At the hearing the parties entered into the record a Stipulation of Facts to which they had agreed.

After the conclusion of the trial, the parties filed briefs, which I have read and considered. Based on those briefs, and the entire record in the case, including the testimony of the witness and my observation of his demeanor, I make the following

FINDINGS OF FACT

I. JURISDICTION

At all material times, RX Services has been a domestic corporation in the business of receiving, processing, and filling medical prescriptions for CVS retail pharmacies, with its principal office located at One CVS Drive, Woonsocket, Rhode Island, and a place of business located at 150 White Wagon Road, Chemung, New York. At all material times, Pharmacy has been a domestic corporation with a principal office at One CVS Drive, Woonsocket, Rhode Island, and with a place of business, operated by a subsidiary of Pharmacy known as CVS Albany, LLC, located at 150 South Wellwood Avenue, Lindenhurst, New York. At all material times, Pharmacy, through subsidiaries such as CVS Albany, LLC, has been engaged in the retail sale of health products, beauty products, groceries, and other consumer products. RX Services and Pharmacy admit and I find that they are employers within the meaning of Section 2(2), (6), and (7) of the Act. (Jt. Exh. 1, pars. 3–8.) RX Services and Pharmacy shall be collectively referred to, where appropriate, as "Respondents."

II. ALLEGED UNFAIR LABOR PRACTICES

A. The Facts

RX Services, a wholly-owned subsidiary of Pharmacy, employs approximately 23,537 employees at retail pharmacies nationwide. Pharmacy operates approximately 7,800 retail stores nationwide, and directly employs approximately 29,789 employees. RX Services has employed Charging Party Kenneth Sternfeld since approximately 2008. Since that time, Sternfeld has been employed as a pharmacist at a CVS store operated by Pharmacy's subsidiary CVS Albany, LLC, located on South Wellwood Avenue in Lindenhurst, New York, or at other stores operated by CVS Albany, LLC.[1] (Jt. Exh. 1, par. 9–15.)

In around October 2014, RX Services and Pharmacy implemented a workplace dispute resolution program. Respondents introduced this program to their employees, including Charging Party Sternfeld, by asking them to complete a computer-based training course describing and presenting it, entitled: "Arbitration of Workplace Legal Disputes, Course 800305." Substantially all employees employed by Respondents as of October 2014, other than union-represented and clinic employees, were instructed to complete this program. (Jt. Exh. 1, par. 16.) Arbitration of Workplace Legal Disputes, Course 800305, contains a link to a pdf document entitled: "CVS Health Colleague Guide to Arbitration."[2] The CVS Health Colleague Guide to Arbitration contains educational material related to arbitration in general and Respondents' arbitration policy, including the following:

> Arbitration is a matter of contract between the colleague and CVS Health. Colleagues accept the policy by continuing their employment with CVS Health after becoming aware of the policy. With that being said, we want colleagues' participation to be voluntary. Colleagues will be asked to acknowledge and agree to the policy, but from the time that a colleague first views or receives the policy, he or she has thirty days to opt out of the policy. If a colleague opts out, he or she will not be obligated to go to arbitration and can continue to use the traditional court system as before. Likewise, if a colleague opts out, CVS Health will not be required to arbitrate any disputes it has with that colleague.
>
> How to Opt Out
> In order to opt out, a colleague must mail a written, signed and dated letter stating clearly that he or she wishes to opt out of the CVS Health Arbitration of Workplace Legal Disputes Policy. The letter must be mailed to CVS Health, P.O. Box 969, Woonsocket, RI 02895. In order to be effective, the colleague's opt out notice must be postmarked no later than 30 days after the date the colleague first views or receives the policy. Please note, sending in a timely notice is the only way to opt out. A colleague cannot opt out by refusing to complete training or attend meetings about the policy.
>
> CVS Health will not tolerate retaliation against any colleague who decides to opt out.

(Jt. Exh. 1, par. 17.)

The CVS Health Colleague Guide to Arbitration also contains Respondents' arbitration policy, entitled: "Arbitration of Workplace Legal Disputes." The Arbitration of Workplace Legal Disputes policy provides in part as follows:

> SCOPE
>
> This policy applies to and forms a mutually-binding contract between CVS Health and all of its employees, except those employees subject to a collective bargaining agreement ("CBA"), unless the CBA contains language recognizing the applicability of policies likes this one. Covered employees are referred to in this policy as "Employee" or "Employees."

---

[1] Sternfeld also worked at stores located at 460 Montauk Highway in West Islip, New York, and at 480 MontaukHighway in Bay Shore, New York.

[2] CVS Health Corporation is the parent company of Pharmacy, and does not employ any employees.

## PROCEDURES

1. *Mutual Obligation to Arbitrate.* Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Policy, This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16)Employees accept this Policy by continuing their employment after becoming aware of the Policy.

2. *Claims Covered by This Policy.* Except as otherwise stated in this Policy, Covered Claims are any legal claims, disputes or controversies that CVS Health may have, now or in the future, against any Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.

Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Family medical Leave Act, Fair Labor Standards Act, Employee Retirement Income security Act ("ERISA") (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by ERISA or funded by insurance), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment. Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy, except as provided in the section below regarding the Class Action Waiver. . . .

6. *Waiver of Class, Collective and Representative Actions ("Class Action Waiver").* Employee and CVS Health will bring any Covered Claims in arbitration *on an individual basis only;* Employee and CVS Health waive any right or authority for any Covered Claims to be brought, heard or arbitrated as a class, collective, representative or private attorney general action. This Class Action Waiver does not apply to any claim an Employee brings as a private attorney general solely on the Employee's own behalf and not on behalf of or regarding others. Notwithstanding any other provision of this Policy or the AAA rules, disputes regarding the validity, enforceability or breach of this Class Action Waiver will be resolved only by a civil court of competent jurisdiction and not by an arbitrator.  If, despite this Class Action Waiver, an Employee files or participates in a class, collective or representative action in any forum, the Employee will not be retaliated against, disciplined or threatened with discipline.  However, CVS Health will seek enforcement of this Policy and the

Class Action Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims.

(Jt. Exh. 1, par. 18.)

Once employees had finished their review of the CVS Health Colleague Guide to Arbitration, they were asked to complete an acknowledgement which electronically verified the following:

- that you have carefully read the CVS Health Policy, "Arbitration of Workplace Legal Disputes" (the "Policy") and understand that it applies to you;

- that you will raise any questions you may have about the Policy to your supervisor or Human Resources and may seek independent legal advice as well;

- that you can obtain copies of the Policy from your supervisor, Human Resources or the CVS Health Policy & Procedure Portal;

- that you have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms;

- that, to opt out, you must mail a written, signed and dated letter, stating clearly that you wish to opt out of this Policy to CVS Health, P.O. Box 969, Woonsocket, RI 02895, which must be postmarked no later than 30 days after the date you first received or viewed a copy of this Policy;

- that by being covered by the Policy and not opting out, you and CVS Health are obligated to go to arbitration instead of court to resolve legal claims covered by the Policy;

- that by being covered by the Policy and not opting out, you and CVS Health are giving up the right to bring or participate in a class, collective or representative action brought on behalf of or regarding others to decide claims covered by the Policy;

- that this electronic communication satisfies any requirement that such communication be in writing; and

- that your click of the "Yes" button creates an electronic signature that is legally binding.

This acknowledgement was printed in the CVS Health Colleague Guide to Arbitration, the pdf document, and then repeated in the Arbitration of Workplace Legal Disputes, Course 800305 training course.  (Jt. Exh. 1, par. 19.)

Beginning in or around October 2014, Respondents implemented a workplace dispute resolution program for substantially all new employees, other than union-represented and clinic employees, by presenting them with a copy of the "CVS Health Arbitration Agreement" as part of the "on-boarding process," their initial orientation and training.[3]  These new hires sign the CVS Health Arbitration Agreement and then have 30 days to opt out of the Agreement.  Whether or not they opt out of the

---

[3]  Respondents' counsel stated at the hearing that the "on-boarding process" is the process by which newly hired employees are informed about Respondents' policies and training, including the arbitration agreement (Tr. 19–20).

8                           DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

Agreement does not affect their ability to work for Respondents.[4]  The CVS Health Arbitration Agreement provides in part:

> 1. *Mutual Agreement to Arbitrate Claims.* The employee named below will be referred to here as "Employee," "You" or "Your". CVS Pharmacy, Inc., including its affiliates, successors, subsidiaries and/or parent companies will be referred to here as "CVS" or "Company". Under this Agreement, You and CVS agree that any dispute between You and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement.
>
> 2. *Claims Covered by this Agreement.* Except as otherwise stated in this Agreement, Covered Claims are any and all claims, disputes or controversies that CVS may have, now or in the future, against You or that You may have, now or in the future, against CVS or one of its employees or agents, arising out of or related to Your employment with CVS or the termination of Your employment. Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act ("ERISA"), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment. Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Agreement, except as provided in paragraph 6, below, regarding the Class Action Waiver. . . .
>
> 6. *Waiver of Class, Collective and Representative Actions ("Class Action Waiver").* You and CVS agree to bring any Covered Claims in arbitration *on an individual basis only*; You and CVS waive any right or authority for any Covered Claims to be brought, heard or arbitrated as a class, collective, representative or private attorney general action. . . .
>
> 7**.** *Your Right to Opt Out of Arbitration.* Arbitration is not a mandatory condition of Your employment at CVS. If You wish, You can opt out of this Agreement for a limited time and, by doing so, not be bound by its terms. To opt out, You must mail a written, signed and dated letter stating clearly that You wish to opt out of this Agreement to CVS Health, P.O. Box 969, Woonsocket, RI 02895. *In order to be effective, Your opt out notice must be postmarked no later than 30 days after the date you agree to the Agreement below*.
>
> 9. *Statement of Assent and Understanding.* By signing below, You acknowledge that You have carefully read

this Agreement, that you understand and agree to its terms, that You have had the chance to ask questions about the Agreement, and that you have had or will have the chance to consult with your own legal counsel before the end of the opt out period described above. You enter into the Agreement voluntarily and not in reliance on any promises or representations made by CVS other than those in the Agreement itself. *You understand that by agreeing to this Agreement and not opting out, You and CVS are giving up the right to go to court to resolve Covered Claims and giving up the right to bring or participate in a class. collective or representative action brought on behalf of or regarding others on Covered Claims.*

(Jt. Exh. 1, par. 20–21.)

Since about October 2014, approximately 2,173 of RX Services' employees have opted out of the Arbitration of Workplace Legal Disputes policy and/or the Arbitration Agreement, including Charging Party Sternfeld. RX Services and Pharmacy process employees' opt-out letters so as to keep an employee's designation with respect to the arbitration program confidential. Access to employees' designations is limited to human resources and other administrative departments with a business need. Store Managers, assistant store managers, pharmacists, pharmacy managers, and pharmacy supervisors generally have no access to such information. (Jt. Exh. 1, par. 23–24.)

Charging Party Sternfeld completed the Arbitration of Workplace Legal Disputes, Course 800305 on October 20, 2014. Within 30 days of completing the course, Sternfeld mailed a written, signed, and dated letter to CVS Health, P.O. Box 969, Woonsocket, Rhode Island, 02895, stating that he "wish[ed] to Opt Out of the CVS Health Arbitration of Workplace Legal Disputes Policy." CVS received Sternfeld's letter on October 24, 2014. (Jt. Exh. 1, par. 25–26.)

### B. Discussion and Analysis

General Counsel contends that this case is controlled by the Board's holding in *D. R. Horton,* reaffirmed in *Murphy Oil USA,* that an employer violates Section 8(a)(1) of the Act by requiring employees "as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbitral or judicial." *D. R. Horton*, 357 NLRB 2277 (2012), enf. denied in relevant part 737 F.3d 344 (5th Cir. 2013); *Murphy Oil USA,* 361 NLRB No. 72 at 1–2 (2014), enf. denied in relevant part ___ F.3d ___, 204 L.R.R.M. 3489 (5th Cir. 2015). General Counsel contends that Respondents' Arbitration of Workplace Legal Disputes policy and Arbitration Agreement,[5] by requiring as a condition of employment that employees enter into an agreement precluding them from filing joint, class, or collective claims related to disputes arising out of their employment, violates Section 8(a)(1) pursuant to *D. R. Horton* and *Murphy Oil USA.* General Counsel further contends that the opt-out provi-

---

[4]  Charging Party Sternfeld was never asked to enter into the CVS Health Arbitration Agreement.

[5]  The Arbitration of Workplace Legal Disputes policy and the Arbitration Agreement will be collectively referred to as Respondents' arbitration policy, where appropriate.

sions of Respondents' arbitration policy are insufficient to establish that the policy does not constitute a mandatory condition of employment, citing *On Assignment Staffing Services*, 362 NLRB No. 189 (2015). However, General Counsel asserts that even if the arbitration policy were not a mandatory condition of employment by virtue of its opt-out provisions, the policy would nevertheless violate Section 8(a)(1). *On Assignment Staffing Services*, supra, at 5–8.

Respondents argue that because Sternfeld complied with the opt-out provisions of the arbitration policy, no agreed-upon class action waiver was created in the instant case. Respondents also contend that class action waivers which are not mandatory conditions of employment are not prohibited by Section 8(a)(1), and argue that *D. R. Horton* and *Murphy Oil USA* should be distinguished on that basis. Respondents contend that because the Federal Arbitration Act compels the enforcement of voluntary class action waivers regardless of their status under the National Labor Relations Act, the Board incorrectly decided this issue in *On Assignment Staffing Services*. Regardless, Respondents argue that the class action waiver here is distinct from those at issue in *On Assignment Staffing Services*, and is therefore permissible. Finally, Respondents make several arguments based upon the charge, complaint, and Section 10(b) of the Act. Respondents contend that the complaint is infirm, in that Pharmacy never employed Sternfeld, and that the arbitration agreement never applied to him given his compliance with the opt-out provision. Respondents also argue that the unfair labor practice charges do not support the complaint, the complaint did not provide adequate notice of the allegations against them, the charge against Pharmacy was improperly solicited, and the allegations against Pharmacy are time barred.

I find that Respondents' arbitration policy violates Section 8(a)(1) under the case law discussed above. Like the arbitration policies in *D. R. Horton*, *Murphy Oil USA*, and *On Assignment Staffing Services*, Respondents' arbitration policy requires that all claims arising out of the employment relationship or its termination be adjudicated via arbitration, and provides for a waiver of all joint, class or collective claims. *D. R. Horton, Inc.*, supra at 2277; *Murphy Oil USA, Inc.*, 361 NLRB No. 72, slip op. at 1, 3, 18–19; *On Assignment Staffing Services*, supra, at 2–4; see also *Amex Card Services Co.*, 363 NLRB No. 40, slip op. at 1–2 (2015). The Arbitration of Workplace Legal Disputes policy contained in the CVS Health Colleague Guide to Arbitration provides at paragraph 1 that all "Covered Claims" "will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum." Paragraph 2 defines "Covered Claims" as encompassing

> any legal claims, disputes or controversies…an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.

Paragraph 6 of the Arbitration of Workplace Legal Disputes policy states that "Covered Claims" will be brought "*on an individual basis only*" (emphasis in original), and may not be

"brought, heard or arbitrated as a class, collective representative or private attorney general action."

The CVS Health Arbitration Agreement includes similar provisions defining Covered Claims and a similar "Waiver of Class, Collective and Representative Actions" in its paragraphs 1, 2, and 6, respectively. The CVS Health Arbitration Agreement further provides at paragraph 9 that

> You understand that by agreeing to this Agreement and not opting out, You and CVS are giving up the right to go to court to resolve Covered Claims and giving up the right to bring or participate in a class, collective or representative action brought on behalf of or regarding others on Covered Claims.

The arbitration policy at issue here thus involves the waiver of all joint, class, or collective claims, and violates Section 8(a)(1) pursuant to *D. R. Horton* and *Murphy Oil USA*.

I further find that the opt-out provisions contained in Respondents' arbitration policy do not establish that the arbitration policy is not a mandatory condition of employment, and do not otherwise obviate the policy's coercive character under existing Board law. As in *On Assignment Staffing Services*, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement require employees to execute an acknowledgement verifying that they have reviewed the Policy and the Agreement. 362 NLRB No. 189, slip op. at 2, 3. In addition, as in *On Assignment Staffing Services*, the arbitration policy provides that the waiver of an employee's right to bring class, collective, or representative actions will take effect unless they submit a "written, signed and dated letter" opting out within a specified period of time (30 days) of having first received or viewed it. 362 NLRB No. 189, slip op. at 2, 3 (Dispute Resolution Agreement provided employees with a 10-day period to submit a written form opting out of class action waiver). In *On Assignment Staffing Services*, the Board concluded that in such circumstances an agreement waiving the right to bring collective or class actions "does not cease to be a condition of employment simply because employees are given an opportunity to opt out of it." 362 NLRB No. 189, at slip op. 1, 3, 4; see also *PAMA Management*, 363 NLRB No. 38, slip op. at 1, 2, 11 (2015).

As a result, here, as in *On Assignment Staffing Services*, Respondents' employees are required to opt-out of the arbitration policy via a written statement within parameters established by Respondents in order to ensure the opt-out's effectiveness. 362 NLRB No. 189, slip op. at 1. The CVS Health Colleague Guide to Arbitration provides that in order to opt out of the policy, an employee must submit a signed letter "stating clearly that he or she wishes to opt out of the CVS Health Arbitration of Workplace Legal Disputes Policy," which "must be postmarked no later than 30 days after the date the colleague first views or receives the policy," this being "the only way to opt out." In *On Assignment Staffing Services*, the Board found that such a procedure "creates a second mandatory condition of employment," requiring that the employee comply with procedures imposed by the employer, which interferes with the right under Section 7 to purse collective or class litigation "by significantly burdening its exercise." 362 NLRB No. 189, slip op. at

1, 4–5. In addition, Respondents' arbitration policy, like the policy at issue in *On Assignment Staffing Services*, impermissibly requires that employees "make an observable choice" or "reveal their sentiments" regarding Section 7 activity, by acknowledging their review of the policy and submitting a written statement of their desire to opt out to the employer. 362 NLRB No. 189, at slip op. 4–5, quoting *Allegheny Ludlum Corp.*, 333 NLRB 734, 740 (2001), enfd. 301 F.3d 167 (3d Cir. 2002).

I further find that the opt-out procedures at issue here are not legally distinguishable from those at issue in *On Assignment Staffing Services*, as Respondents contend. For example, Respondents contend that their procedures require that employees send a letter opting out within 30 days of having received or viewed the arbitration policy, while the employer's procedures in *On Assignment Staffing Services* required the submission of a form opting out within 10 days. 362 NLRB No. 189, slip op. at 2, 3. Respondents also argue that in *On Assignment Staffing Services* the employees were required to comply with the opt-out provisions at the inception of their employment before a dispute had arisen, whereas here Sternfeld had filed a wage and hour claim prior to being Respondents' implementing their arbitration policy, and had actually worked for RX Services for years. These distinctions are not legally significant given the Board's holding in *On Assignment Staffing Services* that "the fact that employees must take *any* steps to preserve their Section 7 rights burdens the exercise of those rights." 362 NLRB No. 189, slip op. at 4 (emphasis added). Nor do the procedures for the submission and maintenance of employee opt-out letters remediate the requirement that employees make an "observable choice" with respect to Respondents' arbitration policy. Although Respondents argue that employees' opt out letters will be maintained separately from their personnel files, and the policy contains assurances of nonretaliation, the Board has found that such circumstances do not mitigate the coercive impact of an opt out procedure which requires that the employees disclose to the employer their sentiments regarding activity protected by Section 7. *On Assignment Staffing Services*, 362 NLRB No. 189, slip op. at 5, fn. 12 (class action waiver's language stating that employees who opt out "will not be subjected to any adverse employment action as a consequence" and maintenance of completed opt-out forms in a central location separately from employee personnel files insufficient to ameliorate waiver's coercive impact).

Furthermore, it is clear that under *On Assignment Staffing Services*, the "mandatory" or "non-mandatory" nature of an agreement to resolve all employment-related disputes through non-class arbitration is irrelevant. In *On Assignment Staffing Services*, the Board evaluated whether an employer could lawfully "enter into an agreement that is *not* a condition of employment with an individual employee to resolve . . . all potential employment disputes through non-class arbitration rather than litigation in court," an issue left open in *D. R. Horton*. *On Assignment Staffing Services*, 362 NLRB No. 189, slip op. at 5–6, quoting *D. R. Horton*, 357 NLRB 2277, 2287 fn. 28 (emphasis in original). The Board concluded that such "non-mandatory agreements" also require that employees "prospectively waive their Section 7 rights," and are therefore "contrary to the National Labor Relations Act and to fundamental princi-

ples of federal labor policy." *On Assignment Staffing Services*, 362 NLRB No. 189, slip op. at 6; see also *PAMA Management*, 363 NLRB No. 38, slip op. at 2.

Respondents argue that voluntary class action waivers are permissible under the NLRA, and that the Board's decision to the contrary in *On Assignment Staffing Services* was simply incorrect, citing decisions of the federal courts and NLRB Administrative Law Judges. Respondents argue on the same basis that the Federal Arbitration Act compels the enforcement of voluntary class action waivers, even if the NLRA invalidates them. However, both of these positions have been considered and rejected by the Board. The Board held in *On Assignment Staffing Services* that voluntary class action waivers violate Section 8(a)(1), rejecting the contention that any conflict with the FAA would otherwise compel their enforcement. 362 NLRB No. 189, slip op. at 5–8. Although Respondent cites to decisions of the Fifth and Ninth Circuits at odds with the Board's position, it is well settled that the Board generally applies a "non-acquiescence policy" with respect to contrary views of the Federal Courts of Appeal. See *D. L. Baker, Inc.*, 351 NLRB 515, 529 fn. 42 (2007); *Pathmark Stores, Inc.*, 342 NLRB 378 fn. 1 (2004). Thus, an NLRB administrative law judge is required to "apply established Board precedent which the Supreme Court has not reversed."[6] *Pathmark Stores, Inc.*, 342 NLRB at 378 fn. 1; see also *Gas Spring Co.*, 296 NLRB 84, 97–98 (1989), enfd. 908 F.2d 966 (4th Cir. 1990). Furthermore, decisions of other NLRB administrative law judges are not binding or persuasive in light of contrary decisions of the Board itself. See, e.g., *Neiman Marcus Group*, 362 NLRB No. 157, slip op. at 8 (2015).

Respondents make several additional arguments in their Post-Hearing Brief which are unavailing. Respondents argue that the record does not establish an agreed-upon class action waiver, because Sternfeld, by opting out of Respondent's arbitration policy, never accepted Respondent's offer to enter into such an agreement. Respondents contend that because the Board's holdings in *D. R. Horton* and *Murphy Oil USA* involved situations where an agreement actually existed, they are inapposite. This argument is premised on the assumption that Sternfeld's having exercised the opt-out provision somehow obviates the existence of the Arbitration of Workplace Legal Disputes policy itself. To the contrary, the opt-out provision is an integral part of Respondents' arbitration policy, and Sternfeld would never have been faced with the necessity of complying with its requirements—requirements which, as discussed above, impinged upon his Section 7 rights in and of themselves—were it not for the policy's existence.

Respondents further contend that the unfair labor practice charge against Pharmacy was improperly solicited by the Board, and should therefore be dismissed. Respondents assert that Sternfeld was never employed by Pharmacy, and that the

---

[6] The Board has repeatedly held that the Supreme Court's decision in *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013), cited by Respondents, does not constitute contrary precedent under the FAA in this respect. *Murphy Oil USA*, 361 NLRB No. 72, slip op. at 2, 8–9; see also *Chesapeake Energy Corp.*, 362 NLRB No. 80, slip op. at 3 (2015).

Board improperly informed RX Services that if it did not stipulate to the addition of Pharmacy as a Respondent the Region would solicit a charge against that entity from Sternfeld. As General Counsel notes, however, Section 102.9 of the Board's Rules and Regulations states that "A charge that any person has engaged in or is engaging in any unfair labor practice affecting commerce may be made by any person," not solely an employee of the Charged Party. Indeed, in previous cases applying *D. R. Horton*, the Board has rejected assertions that charges filed by former employees and legal representatives are invalid on this basis. *Leslie's Poolmart, Inc.*, 362 NLRB No. 184, slip op. at 1 fn. 2 (2015) (charge filed by former employee of Respondent); *PJ Cheese, Inc.*, 362 NLRB No. 177, at fn. 1 (2015) (charge filed by employee's attorney). Nor do I find that the charge against Pharmacy was improperly solicited, because Respondents have not established that the Board acted "so completely outside of the situation which gave rise to the (original) charge that it may be said to be initiating the proceeding on its own motion." *NLRB v. Reliance Steel Products Co.*, 322 F.2d 49, 53 (5th Cir. 1963); see also *Alberici-Fruin-Conlon*, 226 NLRB 1315, 1316 (1976), enfd. 567 F.2d 833 (1977); *Allis-Chalmers Corp.*, 224 NLRB 1199, 1218 fn. 30 (1976), enfd. in relevant part 563 F.2d 674 (5th Cir. 1977). Respondents stipulated here that in or around October 2014, they implemented a workplace dispute resolution program containing the arbitration policy, including the class action waiver and opt-out provisions, applicable to all current and new employees, and that while Sternfeld was not employed by Pharmacy, he worked at CVS stores operated by a Pharmacy subsidiary. As a result, the solicitation of a charge against Pharmacy was not so utterly extraneous to the situation engendering Sternfeld's charge against RX Services that the Board could be viewed as "initiating the proceeding on its own motion." See *Alberici-Fruin-Conlon*, 226 NLRB at 1316 (charge against employer alleging discharge in violation of Sec. 8(a)(3) not improperly solicited, where original charge against union alleged unlawful attempt to cause employer to discriminate against Charging Party in violation of Section 8(b)(2)); see also *NLRB v. Laborers*, 567 F.2d at 835.

Respondents next argue that the complaint's allegations do not provide adequate notice of the claims asserted against them, and are not factually related to the unfair labor practice charges. Respondents contend that the complaint does not provide adequate notice of the claims against them because it construes Respondents and Sternfeld as having entered into an agreement in the context of Respondents' Arbitration of Workplace Legal Disputes policy. Respondents argue that in order to provide adequate notice, the complaint should have alleged that Respondents violated Section 8(a)(1) by merely requesting that Sternfeld and other employees enter into a waiver of class or collective claims. As discussed above, Sternfeld's compliance with the Arbitration of Workplace Legal Disputes policy's opt-out provision did not obviate the existence of the arbitration policy itself as applied to him, or to any other employee. As a result, this argument is not persuasive.

Nor is dismissal of the complaint warranted on the grounds that it is not adequately supported by the unfair labor practice charges filed by Sternfeld. It is well settled that in order to be

adequately supported by the underlying charge, a complaint allegation must be "factually related" to the allegations in the charge itself. When making such a determination, the Board considers whether the complaint allegations involve the same legal theory and arise from the same factual circumstances or sequence of events as the charge, and whether a respondent would raise similar defenses to both sets of allegations. *Nickles Bakery of Indiana*, 296 NLRB 927, 928 (1989); *Tasty Baking Co.*, 330 NLRB 560, 563 (2000), enfd. 254 F.3d 114 (D.C.Cir. 2001). That standard is satisfied here, as both the charges and the complaint allege that Respondents' arbitration policy, as contained in the Arbitration of Workplace Legal Disputes policy and Arbitration Agreement, restricts the exercise of employees' Section 7 rights.[7] Respondents contend that the charges against RX Services and Pharmacy both allege that the arbitration policy is "overbroad" or "overly broad" in impact—a theory which is qualitatively distinct from an assertion that the arbitration policy violated Section 8(a)(1) by requiring a waiver of the right to bring class or collective actions. However, the both the charge against Pharmacy and the complaint allege that the arbitration policy violates Section 8(a)(1) by restricting and coercing employees in the exercise of their Section 7 rights. Thus the charge against Pharmacy was adequate to support the complaint's allegations against it. See *Nickles Bakery of Indiana*, 296 NLRB at 928 fn. 5 ("similar legal theories" alleged in charge and complaint need not involve the same section of the Act); *Redd-I, Inc.*, 290 NLRB 1115, 1118 (1988) (retaliatory discharge allegation "of the same class" as other allegations of layoffs and discharges in retaliation for union activity). Both the Pharmacy charge and complaint allegations involve the same sequence of events – Respondents' implementation of the arbitration policy—and would engender similar defenses. Furthermore, *Lotus Suites, Inc. v. NLRB*, 32 F.3d 588 (D.C. Cir. 1994), cited by Respondent, is inapposite. That case involved a charge containing retyped "boilerplate" language, printed on every unfair labor practice charge form, alleging violations of Section 8(a)(1) and (3), with no factual information whatsoever. *Lotus Suites*, 32 F.3d at 591–592; *Embassy Suites Resorts*, 309 NLRB 1313, 1313–1315, 1317–1318 (1992) ("We recognize that the sole difference between this case and *Nickles Bakery* is that, in this case, the broad language has been typed by the Union in the body of the charge form in addition to having been preprinted by the Board on the bottom of it"). That clearly is not the case here. Thus the record does not establish that the charge against Pharmacy fails to adequately support the

---

[7]  The charge against RX Services alleged that "In October 2014, CVS instituted a nationwide 'Guide to Arbitration,' containing unlawfully, overbroad restrictions on the rights of their employees" (GC Exh. 1(a).) The charge against Pharmacy alleged that "Since about October 2014 [Pharmacy] and its subsidiaries have implemented and maintained an overly broad dispute resolution policy that interferes with, restricts, and coerces employees in the exercise of their Section 7 rights" (GC Exh. 1(s)).

The complaint alleges that by its conduct with respect to the Guide to Arbitration and Arbitration Agreement, Respondent "has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act" (GC Exh. 1(x), par. 16).

relevant complaint allegations.

Finally, Respondents' assertion that the charge against Pharmacy is precluded under Section 10(b) is unfounded. Respondents contend that the complaint's allegations against Pharmacy are solely based on the implementation of the arbitration policy in October 2014, and thus the charge against Pharmacy, filed on June 25, 2015, is time-barred. However, the complaint alleges at paragraph 14 that "Beginning around October 2014, Respondents implemented their workplace dispute resolution program for new employees by presenting new employees with a copy of the 'CVS Health Arbitration Agreement,' as part of Respondents' on-boarding process." As a result, the complaint alleges, and the Stipulation of Facts entered into by the parties provides, that *both* Respondents have applied the arbitration policy, including the Arbitration Agreement, to new employees on an ongoing basis. It is well settled that the maintenance of an unlawful work rule within the 10(b) period constitutes a continuing violation. See, e.g., *Pama Management*, 363 NLRB No. 38, slip op. at 1; *On Assignment Staffing Services*, 362 NLRB No. 189, slip op. at 2 fn. 6. As a result, the allegations against Pharmacy are not time barred.

For all of the foregoing reasons, I find that Respondents' arbitration policy, as contained in the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration including the Arbitration of Workplace Legal Disputes policy, and the CVS Health Arbitration Agreement, impermissibly requires that employees waive their right under Section 7 to pursue collective or class actions. As a result the arbitration policy violates Section 8(a)(1) of the Act.

CONCLUSIONS OF LAW

1. Respondent CVS RX Services, Inc., is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

2. Respondent CVS Pharmacy, Inc., is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

3. By implementing and maintaining a workplace dispute resolution program which requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver, Respondents CVS RX Services, Inc. and CVS Pharmacy, Inc. have violated Section 8(a)(1) of the Act.

4. The above violation is an unfair labor practice affecting commerce within the meaning of Section 2(6) and (7) of the Act.

REMEDY

Having found that Respondent engaged in an unfair labor practice, I shall order it to cease and desist from such conduct and to take certain affirmative action designed to effectuate the policies of the Act.

I have found that Respondents implemented and maintained a mandatory workplace dispute resolution policy which requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt

out of the waiver. I therefore recommend that Respondents be ordered to rescind the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration of Workplace Legal Disputes Policy and the CVS Health Arbitration Agreement, and to provide the employees with specific notification that these documents have been rescinded. I recommend that Respondent be ordered to alternatively revise the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy and the CVS Health Arbitration Agreement to clarify that they do not constitute a waiver in all forums of the employees' right to maintain employment-related class or collective claims, and to notify the employees of the revised documents, including providing the employees with copies of the revised documents. Because Respondents applied the workplace dispute resolution program to all of their employees as a condition of their employment, I will recommend that Respondents post a notice in all locations where the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy and the CVS Health Arbitration Agreement were utilized. *On Assignment Staffing Services*, 362 NLRB No. 189, slip op. at 10; *D. R. Horton, Inc.*, 357 NLRB 2277, 2287; *U-Haul Co. of California*, 347 NLRB at 375 fn. 2; see also *Guardsmark, LLC*, 344 NLRB 809, 812 (2005), enfd. in relevant part 475 F.3d 369 (D.C. Cir. 2007).

On these findings of fact and conclusions of law, and on the entire record herein, I issue the following recommended[8]

ORDER

The Respondents, CVS RX Services, Inc. and CVS Pharmacy, Inc., their officers, agents, successors and assigns, shall

1. Cease and desist from

(a) Implementing and maintaining a workplace dispute resolution program which requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver.

(b) In any like or related manner, interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Rescind the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy and the CVS Health Arbitration Agreement, or revise these documents to make clear to employees that they do not constitute a waiver in all forums of the employees' right to maintain employment-related class or collective actions.

(b) Notify the employees of the rescission or the revised Ar-

---

[8] If no exceptions are filed, as provided by Sec. 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended order shall, as provided in Sec. 102.48 of the Rules, be adopted by the Board and all objections to them shall be waived for all purposes.

Case 1:16-cv-01506-CBA-RER   Document 81-4   Filed 06/20/17   Page 15 of 15 PageID #: 718

bitration of Workplace Legal Disputes, Course 800305, CVS Health Colleague Guide to Arbitration, Arbitration of Workplace Legal Disputes Policy and CVS Health Arbitration Agreement, and provide them with a copy of the revised documents or specific notification that the documents have been rescinded.

(c) Within 14 days after service by the Region, post, all locations where the Arbitration of Workplace Legal Disputes, Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy and the CVS Health Arbitration Agreement were utilized, copies of the attached notice marked "Appendix."[9]  Copies of the notice, on forms provided by the Regional Director for Region 29, after being signed by the Respondents' authorized representative, shall be posted by the Respondents and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted.  In addition to physical posting of paper notices, notices shall be distributed electronically, such as email, posting on an intranet or an internet site, and/or other electronic means, if Respondents customarily communicate with employees by such means.  Reasonable steps shall be taken by Respondents to ensure that the notices are not altered, defaced, or covered by any other material.  In the event that, during the pendency of these proceedings, Respondents have gone out of business or closed the facility involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees employed by Respondents at any time since October 1, 2014.

(d) Within 21 days after service by the Region, file with the Regional Director a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated, Washington, D.C.,  December 24, 2015

APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated the National Labor Relations Act and has ordered us to post and abide by this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union
Choose representatives to bargain with us on your behalf
Act together with other employees for your benefits and protection
Choose not to engage in any of these protected activities.

WE WILL NOT maintain a workplace dispute resolution program which requires employees, as a condition of employment, to waive the right to maintain class or collective actions in all forums, whether arbitral or judicial, unless employees individually opt out of the waiver.

WE WILL NOT, in any like or related manner, interfere with, restrain, or coerce employees in the exercise of the rights guaranteed them by Section 7 of the Act.

WE WILL rescind or revise our Arbitration of Workplace Legal Disputes, Course 800305, CVS Health Colleague Guide to Arbitration, Arbitration of Workplace Legal Disputes Policy and CVS Health Arbitration Agreement to make clear to employees that these documents do not require a waiver of their right to maintain employment-related class or collective actions in all forums.

WE WILL notify employees of the rescinded or revised Arbitration of Workplace Legal Disputes, Course 800305, CVS Health Colleague Guide to Arbitration, Arbitration of Workplace Legal Disputes Policy and CVS Health Arbitration Agreement, and provide them with a copy of the revised documents or specific notification that these documents have been rescinded.

CVS RX SERVICES, INC.

The Administrative Law Judge's decision can be found at www.nlrb.gov/case/29–CA–141164 or by using the QR code below.  Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1099 14th Street, N.W., Washington, D.C. 20570, or by calling (202) 273–1940.



---

[9]  If this order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."